OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
David Raizman, CA Bar No. 129407
david.raizman@ogletree.com
400 South Hope Street, Suite 1200
Los Angeles, CA 90071
Telephone: 213-239-9800
Facsimile: 213-239-9045

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
RICHARD W. WARREN, MI Bar No. 63123
Richard.warren@ogletree.com
(*pro hac vice* application anticipated)
34977 Woodward Avenue, Suite 300
Birmingham, MI 48009
Telephone: 213-239-9800

Attorneys for Plaintiffs
CLINICAS DEL CAMINO
REAL, INC., CLINICAS DEL CAMINO REAL, INC.
EMPLOYEE GROUP HEALTH BENEFIT TRUST PLAN

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLINICAS DEL CAMINO REAL, INC., CLINICAS DEL CAMINO REAL, INC. EMPLOYEE GROUP HEALTH BENEFIT TRUST PLAN,<br><br>                   Plaintiffs,<br><br>         v.<br><br>BLANCHARD EMPLOYEE BENEFIT ADMINISTRATORS, INC., d/b/a EMPLOYEE BENEFIT ADMINISTRATORS,<br><br>                   Defendant | Case No. 2:24-cv-09685<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

# COMPLAINT

Plaintiffs, Clinicas Del Camino Real, Inc., and the Clinicas Del Camino Real, Inc. Employee Group Health Benefit Trust Plan (hereafter referred to collectively as "Clinicas"), by and through its counsel, Ogletree Deakins, Nash, Smoak & Stewart, PLLC, hereby state as their Complaint against Defendant, Employee Benefit Administrators ("EBA"), as follows:

## NATURE OF ACTION

1.     Clinicas entrusted EBA to administer its self-insured employee benefit Plan, the Clinicas Employee Group Health Benefit Trust Plan ("Plan"). Pursuant to an Administrative Agreement (the "Agreement," a true and correct copy of which is attached as Exhibit "1" to this Complaint and is hereby incorporated in whole by this reference), Clinicas wired large sums of money to EBA, which EBA was supposed to maintain in a trust account to be used to process and pay out employee health care claims.

2.     The Agreement requires EBA to, among other things: supervise, manage and administer the Plan in accordance with the Plan's terms, assist with the enrollment of employees, develop, design and install administrative and record-keeping systems, analyze and retain bills, claims and receipts, determine the amount of benefits payable to participants under the plan, act as Clinicas's representative in adjusting benefit payments, maintain a trust account from which to pay plan benefits to participants, establish claims files on covered employees and dependents, maintain records as are necessary to account for benefits payable under the Plan, provide monthly tabulations of benefits paid with additional key information, provide such reporting and disclosures as required by ERISA and under the law, and confirm eligibility under the Plan.

3.     EBA violated a substantial portion of those contractual requirements over a prolonged period of time, failed to acknowledge its breaches of the Agreement

described in this Complaint, and refused to correct or cure them or compensate Clinicas for the breaches.

4.    EBA's contractual breaches, and breaches of fiduciary duty, led to, among other things, a United States Department of Labor investigation against Clinicas and EBA.  The Department of Labor concluded that EBA had failed to properly draft Summary Plan Descriptions, and utilized outdated ICD-9 Code sets to adjudicate claims.

5.    The Department of Labor investigation took nearly two years to close, because EBA continually failed to provide the data and information the Department needed to fully investigate.

6.    Upon information and belief, EBA has been involved in several US Department of Labor investigations stemming from similar failures as to other plans.

7.    Clinicas eventually learned that, contrary to the Agreement, EBA did not maintain the Plan's funds in a trust, did not properly pay claims, did not utilize the correct billing codes, did not timely pay benefit claims, failed to provide legally-required disclosures and documents, and otherwise substantially failed to perform its obligations pursuant to the Plan.

8.    EBA's failures led to Plan participants receiving collection notices from health care providers due to EBA's refusal and/or failure to timely process claims.

9.    As a result of EBA's complete and utter failure to comply with its contractual obligations under the Agreement, Clinicas was forced to identify and retain an alternative third party administrator to handle benefit claims.

10.    In an act of unlawful retaliation for Clinicas's retention of an alternative third party administrator for the Plan, EBA has refused to: (a) pay any further benefit claims properly made under the Plan; and (b) return the trust fund assets, which belong to the Plan, from which those benefits were required to be paid.  EBA has no lawful basis for either action.

11.     EBA's misappropriation of Plan assets, refusal to timely pay benefit claims, numerous breaches of the Agreement and failure to properly carry out its fiduciary duties is a clear violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, as well as California statutes and common law.  Plaintiffs bring this suit to recover the misappropriated funds, seek other appropriate equitable relief and all other relief to which they are entitled.

## PARTIES, JURISDICTION AND VENUE

12.     Clinicas Del Camino Real, Inc. is a California not-for-profit corporation, with its principal places of business in Camarillo, California.  It is a "Federally Qualified Health Center," or FQHC, whose mission is to use federal funds to provide a wide range of primary medical and dental care to underserved communities within Clinicas's service area at no or low cost to the patients.  The funds at issue in this action that EBA is unlawfully retaining are mostly, if not completely, federal funds that the federal government provided to Clinicas to pay for primary medical and dental services to underserved communities.

13.     The Clinicas Employee Group Health Benefit Trust Plan is Clinicas's ERISA-governed health benefit plan. Clinicas and the Plan are collectively referred to as "Clinicas".

14.     EBA is a California for-profit corporation which maintains its headquarters at 424 North First Avenue, Arcadia, California 91006.

15.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132 because Clinicas's claims arise under ERISA. This Court also has supplemental jurisdiction over Clinicas's state law claims pursuant to 28 U.S.C. § 1367.

16.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because EBA resides and maintains its principal place of business in the Central District of California. Venue is also proper pursuant to 29 U.S.C. § 1132(e)(2).

**GENERAL ALLEGATIONS**

17.     Clinicas provides comprehensive and preventative healthcare services to underserved communities in Ventura County, California. Clinicas operates sixteen locations and employs over 900 employees.

18.     Clinicas offers many of its full-time employees health care benefits through the Plan. Rather than buy health insurance to cover employee health care claims under the Plan, Clinicas has opted to self-insure. As such, Clinicas pays the actual employee health care costs covered by the Plan. Clinicas then buys stop loss insurance to cover catastrophic claims that exceed that threshold.

**A.     Clinicas Contracted with EBA to Administer Its Self-Insured Health Plan**

19.     The framework for the obligations owed by EBA to Clinicas and Plan participants is contained in the Administrative Agreement. The Administrative Agreement is a boilerplate document drafted by EBA.  It sets forth the rights and responsibilities of each party with regard to EBA's administration of the Plan.

20.     The first Administrative Agreement between Clinicas and EBA was executed by the parties effective December 1, 2005. A copy of the 2005 Administrative Agreement is attached to this Complaint as **Exhibit 1.**

21.     Pursuant to the 2005 Administrative Agreement, EBA agreed to administer Clinicas's self-funded medical plan, dental plan, pre-authorization services, and COBRA (the "Plan"), by paying covered employee health care claims on behalf of Clinicas, using money provided to it by Clinicas.

22.     More specifically, the Agreement requires EBA to, among other things: supervise, manage and administer the Plan in accordance with the Plan's terms, assist with the enrollment of employees, develop, design and install administrative and record-keeping systems, analyze and retain bills, determine the amount of benefits payable to participants, act as Clinicas' representative in adjusting benefit payments and negotiating with health care providers, maintain a trust account from which to pay plan benefits, establish claims files, maintain records necessary to account for benefits

payable under the Plan, provide monthly tabulations of benefits paid with additional key information, provide such reporting and disclosures as required by ERISA and under the law, and confirm eligibility under the Plan.

23.    In exchange for its services, EBA was entitled to an administrative fee.

24.    The Administrative Agreement does not contain any pricing terms. Rather, the specific fees to be paid by Clinicas in exchange for the administrative services provided by EBA were enumerated in "Addendum I," which was part of the 2005 Administrative Agreement. Together, the Administrative Agreement and Addendum I formed the parties' contract.

25.    The 2005 Administrative Agreement was renewed year after year by the parties until November 2023, when the sheer scope and size of EBA's pattern of contractual and fiduciary breaches made it impossible for Clinicas to continue allowing EBA to serve as its third party administrator for the Plan. True and correct copies of the relevant Amendments are attached as **Exhibit 2**.

**B.    Clinicas Provided EBA With Plan Assets, Which Were Controlled by EBA and Supposed to be Used to Pay Covered Employee Claims**

26.    Under the 2005 Administrative Agreement, Clinicas was required to prepay the *pro rata* cost of Amounts Billed for that month, and to provide funds to EBA for the daily payment of the claims accepted by EBA.

27.    The specific prepay amounts to be paid by Clinicas were dictated by each year's Addendum I.

28.    Under the Administrative Agreement, in the event of the termination of the Agreement, EBA "shall complete the processing of all requests for benefit payments under the Plan which are received by it and are due and payable prior to the termination" of the Agreement. See **Exhibit 1.**

29.    Under the Administrative Agreement, EBA was required to provide Clinicas with "monthly tabulations of benefits paid showing type of claim, amount of charge, amount paid, date of occurrence, payroll designation of employee and prepare

annual summary of all benefits paid" and "provide such reporting and disclosure as may be required by law." See **Exhibit 1 at page 3**.

30.    Pursuant to the terms of the 2005 Administrative Agreement, as renewed, Clinicas wired the required prepayments to an EBA-owned bank account, on a periodic basis from 2005 through present.

31.    The payments wired to EBA's bank account were and remain "Plan Assets" as defined by ERISA.

32.    EBA had complete authority and control over the bank account and the Plan Assets wired to it by Clinicas, and was and is obligated to use those assets solely to pay claims made under the Plan by its participants.

33.    EBA: (1) exercised discretionary authority and control with respect to management of the Plan; (2) exercised authority and control with respect to management and disposition of Plan Assets; and (3) had discretionary authority and responsibility in the administration of the Plan.

**C.    EBA Failed to Properly Perform Its Obligations under the Administrative Agreement, Committing Multiple Breaches of the Agreement**

34.    Under 45 C.F.R. § 147.20, and other sections, a Plan "and its administrator" offering group health insurance coverage is required to provide a written summary of benefits and coverage for each benefit package, without charge, to participants and other entities as required by the regulation.

35.    In addition, the Administrative Agreement requires EBA to "[p]rovide such reporting and disclosures as may be required by law." See **Exhibit 1**.

36.    EBA failed to timely create and provide a Summary of Benefits and Coverage for the dental plan in direct violation of and Administrative Agreement and federal law.

37.    EBA is also required to "[e]stablish claims files on covered employees and dependents and maintain such records as are necessary to account for benefits payable under the Plan." **Exhibit 1**.

38.    EBA has also engaged in a pattern of failing to provide case management reports, pre-certification reports, and trigger reports in direct violation of the Administrative Agreement and despite repeated requests from Clinicas to do so.

39.    In contravention of the Administrative Agreement, EBA has also failed to confirm the eligible participants in the Plan, meaning that Clinicas could not rely upon EBA's records to verify which of its employees are Plan participants.

40.    EBA has consistently failed to provide claims data in accessible formats that allow for reasonable review and analysis of the data.

41.    EBA has still failed to provide information it is required to maintain as a fiduciary and is required to supply Clinicas pursuant to the Administrative Agreement.

42.    EBA has also engaged in a pattern of failing to timely process benefit claims it is required to process under the Agreement, and as a Plan fiduciary.  In particular, EBA appears to have intentionally delayed processing benefit claims for Plaintiffs' executive management team and their dependents.

43.    EBA's pattern of untimely processing benefit claims (or utterly failing to do so) has resulted in plan participants being sent collection notices from health care providers due to EBA's failure and/or refusal to timely process them.  The duty to process benefit claims is one of EBA's most basic functions under the Agreement, and as a Plan fiduciary, and EBA has failed to uphold this duty.

44.    On May 30, 2023, Clinicas sent a communication to EBA requesting the data missing from an annual utilization report sent by EBA.

45.    To date, EBA has failed to supply the requested data including detailed case management reports, pre-certification reports, and trigger reports.

46.    EBA is required to provide these reports pursuant to the Administrative Agreement and its fiduciary duties.

47.    As a result of EBA's pattern of unacceptable breaches of the Agreement, Plaintiff notified EBA that it would be using the services of a new third party administrator going forward, and that it would discontinue using EBA's services.

48.     Under the Agreement and applicable law, EBA is obligated to use Plan assets to pay benefit claims that were submitted prior to the notification of termination of the Agreement.

49.     Notwithstanding these obligations, EBA has refused to process these benefit claims, and has also unlawfully refused to return the Plan assets to Plaintiff. This raises concerns that EBA has illegally and unlawfully directed those Plan assets to its own purposes, and no longer has those assets that belong to the Plan.

50.     Since November 2023, EBA has refused to pay claims made by Plan Participants pursuant to its duty as a Plan fiduciary.

51.     EBA has also refused to return funds to Clinicas that EBA retains in a checking account so that Clinicas can use the funds to properly pay claims made pursuant to the Plan.

52.     Clinicas (and the Plan) have suffered significant damage as a result.

**D.     EBA Failure to Follow Laws and Regulations in Effect during the Outbreak Period**

53.     Shortly after the COVID-19 outbreak, the Department of Labor ("DOL") and the Internal Revenue Service ("IRS") issued notices of plan-related deadlines for the determination of benefits, including how particular deadlines would be suspended during the Outbreak Period.

54.     The Outbreak Period was defined as the period beginning March 1, 2020, and ending sixty days after the announced end of the National Emergency.

55.     Clinicas learned that EBA, in direct violation of its fiduciary duty under the Plan, and in violation of the governmental mandates, rejected claims as untimely during the Outbreak Period.

56.     At its own cost and expense, Clinicas retained benefits counsel to work directly with EBA to correct these erroneously rejected claims.

57.     Further, contrary to its duties under the Agreement and ERISA, EBA refused to accept electronic benefit claims, insisting that unless a claim was presented

in paper form, it would not process or pay those claims.  There is nothing in the Agreement, or ERISA, that permits EBA to insist on the submission of claims in paper form.

58.    As a result of EBA's refusal to process electronic claims, benefit claims remained undecided for an extended period of time, which worked to the detriment of the Plan and its participants.

59.    EBA also engaged in shocking breaches of its basic obligation to prepare and distribute Summary Plan Descriptions that accurately described coverage.  The Summary Plan Descriptions prepared by EBA left out whole categories of covered employees, giving all readers a false impression of who was covered, and not covered, by the Plan.

60.    Also contrary to its duties under the Agreement, EBA failed or refused to attend Plan Trustee meetings, which it was required to do, and which its failure to do caused the Trustees to experience a lack of information and visibility into the status of benefit claims, inaccurate Summary Plan Descriptions, a lack of required benefit claims reporting.

**E.    The Department of Labor's Investigation into EBA**

61.    On August 30, 2022, the DOL published its findings after an investigation it conducted into EBA. See **Exhibit 3**.

62.    During the course of the DOL's investigation, it found that EBA committed numerous violations of law.

63.    The DOL explicitly noted that EBA utilized outdated ICD-9 code sets and uncovered concerns with EBA's adjudication process with respect to emergency claims filed under 29 C.F.R. § 2590.715-2719A.

64.    The DOL further noted that it could not review or analyze the reports provided by EBA because of the voluminous, unorganized nature of the reports.  EBA engaged in an antiquated, disorganized and unhelpful method of tracking claims and other key information, essentially doing so only in paper format, a format that makes

it nearly impossible to analyze.  EBA refused to provide the DOL with the information it requested in an actual usable format.

65.    The DOL investigation was also prolonged by EBA's failure to timely provide the claims data upon request.

66.    The delay, caused by EBA, in the resolution of the DOL investigation resulted in harm to Clinicas and to Plan participants.

67.    The DOL also concluded that the Plan did not comply with the Mental Health Parity and Addiction Equity Act (MHPAEA) and Consolidated Appropriations Act for non-quantitative treatment limitations because the Plan Booklet/Summary Plan Description ("SPD") did not reflect certain coverage related to speech therapy treatments.

68.    The DOL's findings as to EBA's violations of law conclusively establish, also as a matter of law, that EBA breached the Agreement and violated ERISA.

69.    The DOL also found that EBA failed to prepare SPDs that accurately stated whether specific claims were excluded.

70.    Specifically, the DOL found that the SPD prepared for EBA falsely stated that claims for self-inflicted injuries were excluded from coverage, without stating – as required by law – an exception for this general statement arising out of instance of domestic violence or a medical condition, as required by 29 C.F.R. § 2590.702(b)(2)(iii).

71.    The DOL specifically concluded that EBA's SPD was "inaccurate and potentially misleading."  Further, EBA's flawed SPD could have led participants to falsely assume that valid claims were not covered, leading them not to file them in the first instance.

72.    These issues would not have arisen had EBA been aware of the requirements of the MHPAEA and the Consolidated Appropriations Act and properly amended the Plan Booklet/SPD.

73.    EBA's continued refusal to process benefit claims, or return the Plan's assets, could potentially subject Plaintiffs to future audits through no fault of their own.

**F.      EBA Is Collecting Fees and Prescription Rebates Without Disclosure**

74.    In March 2023, Clinicas learned that EBA was collecting and retaining prescription rebates.

75.    Prescription rebates are discounts given by a drug manufacturer to a pharmacy benefit manager in exchange for the manager agreeing to use a particular formulary.

76.    These rebates are typically passed on to employers, plan sponsors and plan participants to alleviate their costs.

77.    Instead of passing along those rebates to any of those parties, EBA is simply keeping them without any contractual or legal authority to do so.

78.    EBA has done so without disclosure to the Plan or Clinicas.  It failed to list rebates on any annual reports it provided to Clinicas.

79.    Clinicas never agreed that EBA may collect and retain prescription rebates nor that EBA could collect TPA fees for entities not encompassed by the SPD.

80.    The Administrative Agreement did not identify such an arrangement, and EBA hid the fact that it was keeping prescription drug rebates from Plaintiffs, forcing Plaintiffs to lodge multiple rounds of questions before EBA admitted to doing so. Only after pressing EBA for further information did EBA disclose that it had struck a side agreement with a pharmacy benefit manager that directed all rebates to EBA. EBA's owner, Louise Blanchard, claimed that because she and EBA comingled rebates belonging to Clinicas Plan participants with rebates stemming from other employer plans, there was no way to identify which rebates Clinicas Plan participants were entitled to.

81.    Clinicas, despite the exercise of reasonable diligence on its part, was not on actual or constructive notice that EBA was collecting TPA fees for these entities nor that EBA was collecting or retaining prescription rebates.

82.   EBA's retention of pharmacy rebates is unlawful, is inconsistent with the Agreement, ERISA fiduciary duties and common law fiduciary duties, and EBA's decision to do so has caused Plaintiff to experience damages.

## FIRST CLAIM FOR RELIEF

## BREACH OF FIDUCIARY DUTY – ERISA (29 U.S.C. § 1002(21)(A)

83.   Plaintiff hereby incorporates by reference here the allegations contained in each of the preceding paragraphs.

84.   EBA was and is a fiduciary under ERISA pursuant to 29 U.S.C. § 1002(21)(A) with respect to the Plan because (1) it exercised discretionary authority and control over management of the Plan; (2) it exercised authority and control over management and disposition of Plan Assets; and (3) it had discretionary authority and responsibility in the administration of the Plan.

85.   Clinicas is a fiduciary because it exercises discretionary authority and control over management of the Plan and employs Plan participants and beneficiaries.

86.   As a fiduciary, EBA was required to, among other things, discharge its duties solely in the interest of the participants and beneficiaries of the Plan, preserve Plan Assets, timely process claims, comply with ERISA, fully disclose its actions and any compensation it was taking for its services, avoid making false or misleading statements, and abide by any and all statutory obligations or restrictions imposed on it.

87.   EBA breached its fiduciary duties by, among other things:

(a)   Failing to timely process claims;

(b)   Refusing to accept electronic claims;

(c)   Refusing to attend Trust Meetings;

(d)   Failing to provide the legally required Summary of Benefits and Coverage;

(e)   Failing to provide and consistent delays in providing claims information and reports;

(f)    Failing to provide employee enrollment rosters;

(g)    Failing to update the Plan Booklet/Summary Plan Description;

(h)    Failing to follow the laws and regulations in effect during the Outbreak Period;

(i)    Refusing to provide data in accessible formats;

(j)    Failing to pay claims made by Plan Participants and refusing to return funds to Clinicas;

(k)    Otherwise engaging in a pattern of conduct designed to mislead, confuse, deceive and otherwise trick Clinicas into paying more for its services than Clinicas was obligated to pay; and

(l)    And as detailed in the Complaint allegations above.

88.    EBA's breach of its fiduciary duty has proximately caused substantial damages to Clinicas and to the Plan.

89.    EBA fraudulently concealed that it was collecting the TPA fees and retaining prescription rebates, the amount of those fees and rebates, and that it was otherwise violating its legal obligations to Plaintiffs.

90.    Clinicas did not discover the full extent of EBA's wrongful conduct until 2023.

91.    EBA's breaches of its fiduciary duties has been longstanding, has been part of a pattern and continues to this day.

## SECOND CLAIM FOR RELIEF

## PROHIBITED TRANSACTION UNDER

## ERISA BY FIDUCIARY (29 U.S.C. § 1106)

92.    Plaintiffs hereby incorporate here by reference the allegations contained in each of the preceding paragraphs.

93.    EBA is a fiduciary pursuant to 29 U.S.C. § 1002(21)(A) and a "party in interest" pursuant to 29 U.S.C. § 1002(14).

94.    As a fiduciary and party in interest, EBA was prohibited from engaging in certain transactions as set forth in 29 U.S.C. § 1106.

95.    EBA's conduct with respect to (1) the retention of prescription rebates and (2) the collection of TPA Fees originating from transactions with entities not covered by the SPD and (3) EBA's failure to return Plan assets, and/or make benefit payments out of the Trust Account in which Clinicas made payments for such a purpose were prohibited transactions because, among other things, (a) they constituted a transfer to, or use by or for the benefit of, EBA of Plan Assets, and (b) EBA dealt with Plan Assets in its own interest and for its own account.

96.    EBA's violation of 29 U.S.C. § 1106 has proximately caused substantial damages to Plaintiffs, the Plan, and Plan participants.

97.    EBA fraudulently concealed that it was collecting the TPA Fees and the prescription rebates, the amount of those fees and rebates, and that it was otherwise violating its legal obligations to Plaintiffs.

98.    Clinicas did not discover the full extent of EBA's wrongful conduct until 2023.

### THIRD CLAIM FOR RELIEF
### PROHIBITED TRANSACTION UNDER ERISA BY NON-FIDUCIARY
### (29 U.S.C. § 1106)

99.    Plaintiffs hereby incorporate here by reference each of the allegations contained in the preceding paragraphs.

100.   The United States Supreme Court, in *Harris Trust and Savings Bank v. Saloman Smith Barney, Inc.*, 530 U.S. 239 (2000), ruled that parties may maintain claims against non-fiduciaries under ERISA for engaging in prohibited transactions.

101.   Even if EBA is not a fiduciary under ERISA, EBA was nonetheless prohibited from engaging in certain transactions as set forth in 29 U.S.C. § 1106, and other transactions under ERISA.

102.   EBA's conduct with respect to (1) the retention of prescription rebates and (2) the collection of TPA Fees originating from transactions with entities not covered by the SPD and (3) EBA's failure to return Plan assets, and/or make benefit payments out of the Trust Account in which Clinicas made payments for such a purpose were prohibited transactions because, among other things, (a) they constituted a transfer to, or use by or for the benefit of, EBA of Plan Assets, and (b) EBA dealt with Plan Assets in its own interest and for its own account.

103.   EBA's violations have proximately caused substantial damages to Plaintiffs, the Plan, and Plan participants.

104.   EBA fraudulently concealed that it was collecting the TPA Fees and the prescription rebates, the amount of those fees and rebates, and that it was otherwise violating its legal obligations to Plaintiffs.

105.   Clinicas did not discover the full extent of EBA's wrongful conduct until 2023.

**FOURTH CLAIM FOR RELIEF**
**BREACH OF CONTRACT, AND ALTERNATIVELY, THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

106.   Plaintiffs incorporate here by reference the allegations contained in each of the preceding paragraphs.

107.   The Administrative Agreement and Addendum I's are enforceable, binding contracts between Clinicas and EBA.

108.   EBA breached the contracts by (1) failing to timely process claims, (2) failure to accept electronic claims; (3) failure to provide required reports and reporting; (4) failing to negotiate on behalf of the Plan; (5) failing to use Plan and trust assets to pay benefit claims; (6) failing and/or refusing to return the Plan and trust assets; (7) collecting TPA Fees not allowed under the SPD, Administrative Agreement and Addendum I's, (8) retaining prescription rebates (9) not reporting or otherwise disclosing the actual claims paid and administrative compensation it received, and/or

(10) submitting false, misleading, or unusable quarterly and annual settlement statements.

109. EBA's breach of the contracts has proximately caused substantial damages to Plaintiffs, including but not limited to loss of Plan assets, costs and fees incurred in connection with correcting EBA's mistakes, costs and fees incurred in connection with a DOL audit caused by EBA's breaches of the contract, and other damages.

110. Alternatively, to the extent the Court finds the contracts allowed EBA to charge the TPA Fees, the amount charged by EBA is not set forth in the contracts and was instead unilaterally determined by EBA without disclosure to, or agreement with, Clinicas.

111. To the extent the contracts allowed EBA to exercise its discretion as to the amount of the TPA Fees, EBA had a duty to exercise that discretion in good faith and in a manner which dealt fairly with Clinicas and was consistent with the parties' objective, reasonable expectations.

112. EBA breached its duty of good faith and fair dealing by, among other things:

       (a)    Collecting TPA Fees unilaterally, secretly, and in bad faith,

       (b)    Failing to disclose or report the TPA Fees,

       (c)    Submitting false, misleading, or unusable quarterly settlements, annual settlements;

       (d)    Otherwise acting in a manner that was in its best interests alone and not fair to Clinicas;

       (e)    Failing to timely process claims;

       (f)    Refusing to accept electronic claims;

       (g)    Refusing to attend Trust Meetings;

       (h)    Failing to provide the legally required Summary of Benefits and Coverage;

(i)    Failing to provide and consistent delays in providing claims information and reports;

(j)    Failing to provide employee enrollment rosters;

(k)    Failing to follow the laws and regulations in effect during the Outbreak Period;

(l)    Refusing to provide data in accessible formats;

(m)    Otherwise engaging in a pattern of conduct designed to mislead, confuse, deceive and otherwise trick Clinicas into paying more for its services than Clinicas was obligated to pay.

113.   EBA fraudulently concealed its breach of contract and breach of the duty of good faith and fair dealing from Plaintiffs.

114.   Clinicas did not discover the full extent of EBA's breach of contract and breach of duty of good faith and fair dealing until 2023.

## FIFTH CLAIM FOR RELIEF
## BREACH OF COMMON LAW FIDUCIARY DUTY

115.   Plaintiffs hereby incorporate here by reference each of the allegations contained in the preceding paragraphs.

116.   Clinicas pleads in the alternative the following common law cause of action.

117.   EBA was in a fiduciary relationship with Clinicas because, among other things, it had control over Plan Assets.

118.   As a fiduciary, EBA was required to, among other things, conduct itself in the best interests of Clinicas, as well as the participants and beneficiaries of the Plan, and fully disclose its actions and any compensation it was taking for its administrative services.

119.   EBA breached its fiduciary duty by, among other things:

(a)    Collecting TPA Fees unilaterally, secretly, and in bad faith,

(b)    Failing to disclose or report the TPA Fees,

(c)     Submitting false, misleading, or unusable quarterly settlements, annual settlements;

(d)     Otherwise acting in a manner that was in its best interests alone and not fair to Clinicas;

(e)     Failing to timely process claims;

(f)     Refusing to accept electronic claims;

(g)     Refusing to attend Trust Meetings;

(h)     Failing to provide the legally required Summary of Benefits and Coverage;

(i)     Failing to provide and consistent delays in providing claims information and reports;

(j)     Failing to provide employee enrollment rosters;

(k)     Failing to follow the laws and regulations in effect during the Outbreak Period;

(l)     Refusing to provide data in accessible formats;

(m)     Otherwise engaging in a pattern of conduct designed to mislead, confuse, deceive and otherwise trick Clinicas into paying more for its services than Clinicas was obligated to pay.

120.    As a proximate result of EBA's wrongful conduct, Clinicas has incurred substantial damages.

121.    EBA fraudulently concealed the foregoing wrongful conduct.

122.    Clinicas did not discover the full extent of EBA's breach of fiduciary duty until 2023.

## **SIXTH CLAIM FOR RELIEF**
## **CONVERSION**

123.    Plaintiffs hereby incorporate here by reference each of the allegations contained in the preceding paragraphs.

124.   Clinicas pleads in the alternative the following common law claim for relief.

125.   As set forth above, EBA was in a position of trust and confidence with respect to Clinicas and Plan Assets.

126.   Clinicas delivered specific monetary funds to EBA, which were to be used to pay appropriate employee health care claims.

127.   After being notified that Clinicas would begin using another third party administrator, EBA was obligated to either continue paying properly submitted benefit claims using Plan assets in EBA's control, or return those Plan assets.

128.   When EBA refused to continue using Plan assets to pay properly submitted benefit claims, EBA had an obligation to return Plan funds not used to pay employee health care claims or other obligations properly due under the Administrative Agreement and Addendum I's.

129.   EBA used its position of trust and confidence to wrongfully divert some of the funds to its own use, inapposite of its contractual and fiduciary obligations.

130.   EBA's has refused to return all funds obtained by it despite failing to pay out claims made by Plan participants pursuant to the Plan.

131.   EBA's refusal to abide by the Administrative Agreement, its retention of the funds deposited by Clinicas, and refusal to return them, constitutes wrongful dominion and control over property of Clinicas.

132.   As a proximate result of EBA's acts, Clinicas has incurred substantial damages.

133.   Clinicas did not discover the full extent of EBA's conversion until 2023.

## **PRAYER FOR RELIEF**

Plaintiffs respectfully request that the Court to enter judgment in their favor and against EBA as follows:

A.   Ordering EBA to provide a full and complete return of all funds within the Trust Account received by it from Plaintiffs;

B.    Declaring that EBA breached its fiduciary duty and otherwise violated ERISA and state law;

C.    Ordering EBA to immediately process all pending benefit claims, on a timely basis, and according to ERISA and the terms of the Plan;

D.    Awarding restitution to Plaintiffs of the TPA Fees it has paid to EBA;

E.    Requiring EBA to return to the Plan all pharmacy rebates EBA received;

F.    Awarding monetary damages, costs, interest and attorneys' fees (including statutory attorneys' fees under ERISA) to the fullest extent of the law; and

G.    Awarding all other equitable or other relief to which Plaintiffs may be entitled.

Respectfully submitted,

DATED:  November 8, 2024        OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By:  */s/ David Raizman*
David Raizman

Attorneys for Plaintiffs
CLINICAS DEL CAMINO REAL, INC., CLINICAS DEL CAMINO REAL, INC. EMPLOYEE GROUP HEALTH BENEFIT TRUST PLAN